UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CACHIL DEHE BAND OF WINTUN INDIANS OF THE COLUSA INDIAN COMMUNITY, a federally recognized Indian Tribe,<br><br>        Plaintiff,<br><br>   v.<br><br>KENNETH SALAZAR, Secretary of the Interior, et al.,<br><br>        Defendants. | No.  2:12-CV-3021-JAM-AC<br><br>**ORDER DENYING PLAINTIFFS' MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND/OR WRIT OF MANDAMUS; ORDER REQUIRING JOINT STATUS REPORT ON MOTION TO INTERVENE** |
| UNITED AUBURN INDIAN COMMUNITY OF THE AUBURN RANCHERIA<br><br>        Plaintiff,<br><br>   v.<br><br>KENNETH SALAZAR, et al.,<br><br>        Defendants. | |
| CITIZENS FOR A BETTER WAY, et al.,<br><br>        Plaintiffs,<br><br>   v. | |

1

UNITED STATES DEPARTMENT OF
THE INTERIOR, et al.,

        Defendants.

## I.    PROCEDURAL BACKGROUND

Before the Court are three Applications for Temporary Restraining Orders ("TROs") and Preliminary Injunctions. The first was filed by Plaintiff Cachil Dehe Band of Wintun Indians of the Colusa Indian Community ("Colusa") (Case # 2:12-CV-3021-JAM-AC, Doc. ## 8, 18).[1] The second was filed by the United Auburn Indian Community of the Auburn Rancheria ("UAIC") (Case # 2:13-CV-64-JAM-AC, Doc. # 49). The third was filed by Dan Logue, William F. Connelly, Stand Up for California!, Citizens for a Better Way, Robert Edwards, Grass Valley Neighbors, James M. Gallagher, Andy Vasquez, Roberto's Restaurant (collectively the "Citizen Plaintiffs") (Case # 2:13-CV-64-JAM-AC, Doc. # 24).[2] The Citizen Plaintiffs also seek a writ of mandamus. Each application seeks to prohibit Defendants Kenneth Lee Salazar, Secretary, U.S. Department of the Interior; Kevin K. Washburn, Assistant Secretary - Indian Affairs, U.S. Department of the Interior; the Bureau of Indian Affairs; and the U.S. Department

---

[1] Case numbers 2:12-CV-3021-JAM-AC and 2:13-CV-64-JAM-AC were consolidated into case number 2:12-CV-3021-JAM-AC on January 23, 2013. Pre-consolidation references to the 2:13-CV-64-JAM-AC docket are included in this order for administrative convenience.
[2] The TRO applications were all submitted upon order of the Court without oral argument. Local Rule 230(g). A hearing for the preliminary injunctions and the motion to intervene is scheduled for March 20, 2013.

2

of the Interior (collectively "Defendants") from accepting a parcel of land into trust for the Enterprise Rancheria of Maidu Indians of California ("Enterprise"). Enterprise also seeks to intervene as a defendant in this lawsuit (Case # 2:12-CV-3021 Doc. # 13). Each TRO is fully briefed by the parties.

## II.   BACKGROUND

At the heart of this litigation are two decisions by Defendants to take a parcel of land near Olivehurst, CA into trust for Enterprise (the "Proposed Site") in order to construct a gaming facility. Pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2719(b)(1)(A), Defendants were required to proceed through a "two-step determination" before taking land into trust for Enterprise. The two-step determination was required because the IGRA prohibits gaming on lands taken into trust after October 17, 1988 unless an exception applies. The § 2718(b)(1)(A) exception permits such an acquisition if the Secretary of the Interior (the "Secretary") consults with state, local, and nearby tribal officials and determines that the acquisition will be in the best interests of the tribe and not detrimental to the surrounding community. Section 2718(b)(1)(A) requires that the Governor of the state concur in the Secretary's determination. On September 1, 2011, Assistant Secretary of Indian Affairs Echo Hawk signed a Record of Decision ("ROD") that the § 2718(b)(1)(A) exception was met with respect to the Proposed Site. Simultaneously, AS-IA Echo Hawk sent a letter to California Governor Brown, requesting his concurrence. Governor Brown concurred by letter dated August 30, 2012 and Defendant

Washburn signed another ROD on November 21, 2012 and published it in the Federal Register on December 3, 2012 announcing Defendants' decision to acquire the Proposed Site in trust for Enterprise.  Because the legal description of the Proposed Site in the original notice contained an error, a revised notice was published on January 2, 2013.

Plaintiffs collectively oppose the acquisition of the Proposed Site based on alleged violations of administrative statutes governing such agency decisions.  Plaintiffs' complaints include causes of action pursuant to the Indian Gaming Regulatory Act, the National Environmental Policy Act, the Indian Reorganization Act of 1934, the Clean Air Act, and the Administrative Procedure Act.  With respect to the present motions, Plaintiffs seek to preserve their challenges by enjoining Defendants' transfer of the Proposed Site into trust so that the merits of their challenges can be considered. Plaintiffs argue that the threat that their suit will be barred by the federal government'sسsovereign immunity once the Proposed Site is transferred into trust necessitates injunctive relief.

Pursuant to 25 C.F.R. Part 151.12(b), the Proposed Site could not be taken into trust for at least another 30 days after December 3, 2012.  In the past, Defendants took the position that the Quiet Title Act ("QTA"), 29 U.S.C. § 2409a, barred suits such as those brought by Plaintiffs in this case once land was transferred into trust and Defendants accordingly stayed transferring land into trust until legal challenges were resolved.  Defendants agreed to delay taking the Proposed Site in this case into trust until February 1, 2013, but declined to stay

the acquisition any longer despite the ongoing litigation. Defendants took the position that a 2012 Supreme Court case, Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, made it clear that the QTA does not bar lawsuits like Plaintiffs' and there was therefore no reason to delay the transfer because the transfer would not divest this Court of jurisdiction to review Defendants' actions and strip title from the government if appropriate. 123 S. Ct. 2199 (2012).

Plaintiffs are collectively wary of Defendants' analysis of the Patchak case, and they dispute the dispositive nature of its holding. They therefore filed their motions for TROs and Preliminary Injunctions in order to halt the transfer of the parcel into trust.

### III. OPINION

#### A. Temporary Restraining Order

##### 1. Legal Standard

Fed. R. Civ. P. 65 provides authority to issue either preliminary injunctions or temporary restraining orders. A plaintiff seeking a preliminary injunction must demonstrate that he is "[1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008)). The requirements for a temporary restraining order are the same. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001). A TRO is an emergency measure,

intended to preserve the status quo pending a fuller hearing on the injunctive relief requested, and the irreparable harm must therefore be clearly immediate.  Fed. R. Civ. Proc. 65(b)(1).

## 2. Discussion

### a) Irreparable Harm of Transferring Proposed Site Into Trust

The primary focus of Plaintiffs' collective TROs is their allegations of irreparable harm.  Plaintiffs contend that the transfer of the Proposed Site must be enjoined pending a hearing on their preliminary injunction motions because once the transfer occurs, this Court may well be without jurisdiction to remove the parcel from trust.  Defendants vigorously contest Plaintiffs' position.  Defendants argue that Patchak makes it clear that the mere transfer of the Proposed Site into trust will not divest this Court of jurisdiction.

Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak involved the 2005 determination of the Secretary of the Interior to take land into trust for an Indian tribe in Michigan. 132 S. Ct. at 2203.  The plaintiff in that case, Patchack, filed suit challenging the acquisition of the parcel as violating the Indian Reorganization Act of 1934 and the APA.  Id.  Patchak contended that the tribe was not federally recognized in 1934, and the Secretary was therefore prohibited from taking the land into trust.  Id.  Patchak sought a declaration that the acquisition was unlawful and an injunction preventing the Secretary from taking title, but he did not assert an interest in the land itself.  Id. at 2203-04.  Shortly after Patchak filed his suit, the Secretary transferred the parcel into trust,

1  converting Patchak's suit into one that sought to divest the
2  government of its title, and the District Court dismissed
3  Patchak's suit upon finding that he lacked prudential standing.
4  The District Court rejected the Secretary's argument that
5  sovereign immunity derived from the QTA barred the suit,
6  contradicting three Circuits' decisions on that issue.  Id. at
7  2204.

8  　　　Patchak's suit was brought pursuant to the APA, which waives
9  federal sovereign immunity from a suit "seeking relief other than
10 money damages and stating a claim that an agency or an officer or
11 employee thereof acted or failed to act in an official capacity
12 or under color of legal authority."  Id. (quoting 5 U.S.C. §
13 702).  The APA's waiver, however, does not override another
14 "statute that grants consent to suit expressly or impliedly
15 forbids the relief which is sought."  Id.  The Secretary
16 contended in Patchak that the QTA overrides the APA's waiver
17 because the QTA authorizes a suit so long as it "does not apply
18 to trust or restricted Indian lands," blocking through its
19 express language the APA's waiver of sovereign immunity for suits
20 seeking to strip the government's title to Indian lands.  Id.
21 (quoting 28 U.S.C. 2409a(a)).

22 　　　The Supreme Court considered the interplay between the QTA
23 and the APA and determined that the QTA only blocks suit when a
24 claimant prosecutes a quiet title action.  Id. at 2210.  A quiet
25 title action for QTA purposes has two key components: 1) it must
26 contest the government's title, and 2) the claimant must assert
27 some competing interest in the property.  Id. at 2206.  If a suit
28 lacks either component, then the QTA's limitation on sovereign

1  immunity does not apply.  Id.  Applying this definition of a
2  quiet title action, the Supreme Court held that Patchak's suit
3  was not barred because the federal government had waived
4  sovereign immunity in the APA.  Id. at 2207.  Patchak did not
5  seek title to the land or otherwise claim an interest in it, and
6  he was therefore not prosecuting a quiet title action.  Id. at
7  2207-08.  Even though all parties agreed that Patchak's suit did
8  seek to divest the federal government of its title to the land,
9  it was not barred by the QTA's Indian lands exception.  Id. at
10 2208.
11      Patchak is indistinguishable from the present case because
12 no Plaintiff claims an interest in the Proposed Site, meaning
13 that this is not a quiet title action and the QTA's limitation on
14 suits related to Indian lands does not apply. Patchak squarely
15 addressed the supposedly irreparable harm that Plaintiffs
16 complain of and indicated that federal district courts do have
17 the power to strip the federal government of title to land taken
18 into trust for an Indian tribe under the APA so long as the
19 claimant does not assert an interest in the land.  In this case,
20 Plaintiffs only seek to divest the government of its title.  They
21 do not assert an interest in the Proposed Site.  Plaintiffs have
22 therefore not shown that the mere act of transferring the
23 Proposed Site into trust on February 1, 2013 constitutes
24 irreparable harm, and a TRO is therefore inappropriate.
25              b) Irreparable Harm of Construction on Proposed
26                 Site
27     Plaintiffs also argue that once the Proposed Site is
28 transferred into trust, construction and/or gaming can begin

1  which will cause irreparable harm relevant to their NEPA and IGRA
2  claims.  Defendants rely on a declaration submitted by Glenda
3  Nelson, who testifies that she is the Chair of Enterprise.  Ms.
4  Nelson indicates that no construction will take place on the
5  Proposed Site for at least 120 days after February 1, 2013.
6  Additionally, Ms. Nelson testifies that Enterprise has agreed to
7  provide 30 days notice to this Court prior to any construction at
8  the Proposed Site.
9  　Colusa objects to the admission of Ms. Nelson's testimony
10 based on the relevance of her entire declaration and the
11 admissibility of several specific statements for various reasons
12 (Case. # 2:12-CV-3021-JAM-AC, Doc. # 37).  Colusa's basic
13 position is that Ms. Nelson's declaration does little to
14 guarantee that construction and/or gaming will not commence at
15 the proposed site prior to the March 20, 2013 hearing date.
16 　While Colusa's concerns might support a finding of
17 irreparable harm if construction and gaming were to occur without
18 any notice, Enterprise and Defendants both represent that 30 days
19 notice will be given before any activity commences at the
20 Proposed Site.  Given this promise, they are further explicitly
21 ordered to provide such notice to this Court at least 30 days
22 prior to commencing any activity on the Proposed Site.  This
23 notice will be sufficient for the Court to revisit the harm
24 caused by activity at the site without issuing a TRO.
25 Accordingly, Plaintiffs are unable to show immediate irreparable
26 harm from construction and/or gaming at the Proposed Site, making
27 a TRO inappropriate.  Defendants and Enterprise are also
28 cautioned that any activity at the Proposed Site prior to the

scheduled March 20, 2013 hearing will not necessarily sway any future equitable analysis in their favor, and they therefore proceed with such activity at their own peril.  The Court has relied on Defendants and Enterprise's representations in determining that irreparable harm is not imminent, but the Court has not reached the merits of Plaintiffs' claims.  In the event that Plaintiffs' claims are found to be meritorious, any further investment in the Proposed Site may be wasted if the Court strips the government's title from the Proposed Site.

### B. Writ of Mandamus

The Citizen Plaintiffs also seek a writ of mandamus compelling Defendants to comply with 25 C.F.R. § 151.12(b) by staying any transfer of the Proposed Site into trust pending the outcome of this litigation.  Defendants oppose a writ of mandamus on the same grounds that they oppose issuance of a TRO.

"For mandamus relief, three elements must be satisfied: '(1) the plaintiff's claim is clear and certain; (2) the [defendant official's] duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available.'"  Johnson v. Reilly, 349 F.3d 1149, 1154 (9th Cir. 2003) (quoting R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061, 1065 n. 5 (9th Cir.1997)).

The Citizens Plaintiffs' motion for a writ fails because they are unable to show that no other adequate remedy is available.  In this case, for the reasons discussed with respect to the TRO, a writ is unnecessary at this point because the Citizen Plaintiffs can still proceed with their Preliminary Injunction Motion on March 20, 2013.  Additionally, the motion

1  for a writ is based on 25 C.F.R. § 151.12(b), but that section
2  only requires a 30 day stay prior to transferring property into
3  trust.  It is undisputed that Defendants complied with that
4  requirement in this case.  Finally, the Citizen Plaintiffs rely
5  on State of S.D. v. U.S. Dep't of Interior, 69 F.3d 878 (8th Cir.
6  1995), which held that judicial review must be available prior to
7  land being taken into trust.  That case is called into question
8  by Patchak, however, because Patchak established that judicial
9  review of such decisions can occur after property is taken into
10 trust.  The Citizen Plaintiffs' motion for a writ of mandamus is
11 accordingly denied.

    C. March 20, 2013 Hearing

13    Plaintiffs' motions for preliminary injunction and
14 Enterprise's motion to intervene remain calendared for March 20,
15 2013.  In light of this order, Plaintiffs are given leave to file
16 supplemental briefs in support of their motions not to exceed 15
17 pages by February 15, 2013, or they may alternatively file one
18 consolidated brief not to exceed 25 pages by the same date.
19 Defendants are given leave to file a consolidated opposition to
20 Plaintiffs' supplemental briefing not to exceed 25 pages by March
21 1, 2013.  Plaintiffs may file individual reply briefs not to
22 exceed 10 pages or one consolidated reply brief not to exceed 15
23 pages by March 8, 2013.  All parties are to exercise extreme
24 caution to not repeat arguments already briefed and presented to
25 this Court.
26    As to the Motion to Intervene, Plaintiffs are ordered to
27 meet and confer with Enterprise before filing any oppositions to
28 this motion.  This Motion to Intervene appears, on its face, to

be meritorious and the Court will not look favorably upon any opposition that is filed simply to create additional and unnecessary work for the Court and Proposed Intervenors. Accordingly the Court orders the parties to file a joint status report on or before February 8, 2013. The parties should inform the Court as to whether any opposition to the Motion to Intervene will be filed and the general grounds upon which the opposition will be based. If there is no opposition to the Motion to Intervene, the parties should submit a stipulation to the Court granting this motion. The parties are hereby notified that even if the Court grants the Motion to Intervene, it is considering placing a number of limitations and/or conditions on Enterprise including, but not limited to, prohibiting Enterprise from filing separate briefs in connection with substantive motions in this case.

## IV. ORDER

1. Plaintiffs' Motions for Temporary Restraining Orders are DENIED.
2. Defendants and Enterprise are ordered to provide 30 days notice to the Court prior to commencing any activity at the Proposed Site.
3. The Citizens Plaintiffs' Motion for Writ of Mandamus is DENIED.
4. Plaintiffs' Motions for Preliminary Injunction will be heard on March 20, 2013 at 9:30 AM in Courtroom No. 6 of this Court. Plaintiffs' supplemental briefing must be filed by February 15, 2013, Defendants may respond by March 1, 2013, and Plaintiffs may

1  reply by March 8, 2013.
2  5. The parties are ordered to meet and confer regarding
3  Enterprise's pending Motion to Intervene and file a joint status
4  report addressing that motion on or before February 8, 2013.
5
6  IT IS SO ORDERED.
7
8  Dated: January 30, 2013      _____
                                 JOHN A. MENDEZ,
9                                UNITED STATES DISTRICT JUDGE

13