UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS FOR A BETTER WAY, et al., | No. 2:12-cv-3021-TLN-AC |
| Plaintiffs, | |
| v. | **ORDER** |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | |
| Defendants. | |

This matter is before the Court pursuant to Defendants' Motions to Strike. (ECF No. 115, 120 and 121.) On August 25, 2014, Plaintiff United Auburn Indian Community of the Auburn Rancheria ("Plaintiff UAIC") filed an opposition to Defendants' motion. (ECF No. 127.) On August 25, 2014, Plaintiff Cachil Dehe Band of Wintun Indians of the Colusa Indian Community ("Plaintiff Colusa") also filed an opposition. (ECF No. 131.) On September 8, 2014, Michael S. Black, Bureau of Indian Affairs, Department of the Interior, Amy Dutschke, Kenneth Salazar, and Kevin Washburn ("Defendants") filed a reply. (ECF No. 135.) For the reasons set forth below, the Court hereby GRANTS Defendants' Motion to Strike (ECF 115); GRANTS Intervenor Defendant Estom Yumeka Maidu Tribe of the Enterprise Rancheria's ("Enterprise") Motion to Strike Affidavit of Marcos Guerrero (ECF No. 120); and GRANTS Enterprise's Motion to Strike Extra-Record Declaration of Alan Meister (ECF No. 121-1).

//

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Colusa is an American Indian Tribe recognized by the Secretary of the Interior. (Complaint, ECF No. 1 at ¶ 2.) Plaintiff UAIC is a federally recognized Indian tribe. (Statement of Facts, ECF No. 98-2 at 2.) Plaintiff UAIC's historical territory is comprised of land in and around Yuba County, California. (ECF No. 98-2 at 2). Defendant Kenneth Salazar ("Salazar" or "Secretary") is the Secretary of the Interior of the United States. (ECF No. 1 at ¶ 3.) Defendant Kevin Washburn ("Washburn") is the Assistant Secretary-Indian Affairs, United States Department of the Interior ("AS-IA"). (ECF No. 1 at ¶ 4.) Defendant Michael Black ("Black") is the Director of the United States Bureau of Indian Affairs ("BIA Director"). (ECF No. 1 at ¶ 5.) Defendant Amy Dutschke is the Director of the Pacific Regional Office of the Bureau of Indian Affairs ("Regional Director"). (ECF No. 1 at ¶ 6.)

At issue here is a planned casino site in Yuba County, California by Enterprise. (ECF No. 1 at ¶20.) The planned casino site is located approximately 39 miles from Plaintiff Colusa Indian Reservation's Casino. (ECF No. 1 at ¶7.) Plaintiff Colusa has operated its own tribal government gaming facility ("Colusa Casino") since approximately 1984. (ECF No. 1 at ¶10.)

On January 16, 2009, the Bureau of Indian Affairs ("the BIA") solicited comments on Enterprise's planned casino application, with comments due by March 17, 2009. (ECF No. 98-2 at 8.) The Distribution List did not include Plaintiff UAIC or any other Indian tribes. (ECF No. 98-2 at 8.) Plaintiff UAIC did not learn of this solicitation for comments until just days before the March 17 deadline. (ECF No. 98-2 at 8.) On March 12, 2009, Plaintiff UAIC submitted comments opposing Enterprise's application and requested an extension of the comment period. (ECF No. 98-2 at 8.) The BIA granted an extension to May 12, 2009, and Plaintiff UAIC submitted further comments opposing Enterprise's application. (ECF No. 98-2 at 8.)

Plaintiff Colusa alleges that in deciding to permit development of this planned off-reservation casino in Yuba County by Enterprise, Defendants the Department of the Interior ("DIO"), its BIA, and their respective officials failed to take a hard look at the impact on the local communities, including nearby Indian tribes, and the human environment. (ECF No. 102-1 at 1.)

On December 14, 2012, Plaintiff Colusa filed a Complaint seeking judicial review of two

2

final agency actions by Defendants Salazar, Washburn, Black and Dutschke: (1) the decision to accept into federal trust status for the benefit of Enterprise title to certain lands located in Yuba County, California ("the planned Casino site") under the authority purportedly granted under 25 U.S.C. §475; and (2) the decision to authorize Enterprise to conduct gaming on said lands purportedly pursuant to the Indian Gaming Regulatory Act, 25 U.S.C.A § 2701, et seq. ("IGRA"). (ECF No. 1).  On July 24, 2014, Defendants filed a Motion to Strike the Declaration of Alan P. Meister and the attached Exhibit 1, the Affidavit of Marcos Guerrero, the Affidavit of Gina S. Young, and the Declaration of Byran M. Killian.  (ECF No. 115.)  Enterprise filed a Motion to Strike the Affidavit of Marcos Guerrero on July 24, 2014.  (ECF No. 120.)  Finally, Enterprise also filed a Motion to Strike Extra-Record Declaration of Alan Meister.  (ECF No. 121-1.)

II. STANDARD OF LAW

Federal Rule of Civil Procedure 12(f) provides that a court may strike from a pleading an (1) insufficient defense, or any (2) redundant, (3) immaterial, (4) impertinent, or (5) scandalous matter.  A court will only consider striking a defense or allegation if it fits within one of these five categories.  *Yursik v. Inland Crop Dusters Inc.,* No. CV–F–11–01602–LJO–JLT, 2011 WL 5592888, at *3 (E.D. Cal. Nov.16, 2011) (citing *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 973–74 (9th Cir. 2010)).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983).  However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp.2 d 1101, 1152 (C.D. Cal. 2003). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Id.*  Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings.  *Wyshak v. City Nat'l Bank,* 607 F.2d 824, 826 (9th Cir. 1979); *see also* Fed. R. Civ. P. 15(a)(2).  If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving the assessment of the sufficiency of the allegations for adjudication on the merits after proper development of the factual nature of the

claims through discovery. *See generally Whittlestone,* 618 F.3d at 974–75.

### III.     ANALYSIS

In their Motion to Strike, Defendants request that evidence not included in the administrative record be stricken. In connection with their summary judgment papers, Plaintiff UAIC has cited, and Plaintiff Colusa has submitted, affidavits and other documents that are not part of the administrative record. (ECF No. 115-1 at 2–3.) The documents at issue are:

1. The Declaration of Alan P. Meister and the attached Exhibit 1, "Economic Impacts" analysis (ECF No. 106);
2. The Affidavit of Marcos Guerrero (ECF No. 49-2 in Case No. 2:13-cv-00064-TLN-AC);
3. The Affidavit of Gina S. Young (ECF No. 49-5 in Case No. 2:13-cv-00064-TLN-AC) and the attached Exhibits 3, 5, 7, 9, and 10; and
4. The Declaration of Bryan M. Killian (ECF No. 54) and the attached Exhibit 3.

Defendants provide that under the Administrative Procedure Act ("APA"), a "reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). The Supreme Court and the Ninth Circuit have emphasized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, (1973); *Fla. Power & Light Co. v. Lorion,* 470 U.S. at 743–44; *Lands Council v. Powell,* 379 F.3d 738, 747 (9th Cir. 2004). Courts normally refuse to consider evidence not before the agency at the time it made its decision. *See Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980); *Wiechers v. Moore*, No. 1:13-CV-00223-LJO, 2014 WL 1400843 (E.D. Cal. Apr. 10, 2014), *recons. denied in part*, No. 1:13-CV-00223-LJO, 2014 WL 1922237 (E.D. Cal. May 14, 2014). The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 (1971).

As for materials outside of the administrative record, courts typically strike these. *See*

*Conservation Cong. v. U.S. Forest Serv.*, No. CIV. S-13-0832-LKK/DAD, 2013 WL 4829320 at *1 n.3 (E.D. Cal., Sept. 6, 2013) (citing *Thompson v. U.S. Dept. of Labor*, 855 F.2d 551, 555 (9th Cir. 1989)) (granting a motion to strike materials submitted outside the Administrative Record in a National Environmental Policy Act case); *Sequoia Forestkeeper v. U.S. Forest Serv.*, No. CV F-09-392 LJO JLT, 2010 WL 5059621 at *7 (E.D. Cal. Dec. 3, 2010) ("this Court strikes the declarations and exhibits submitted by Sequoia Forestkeeper, and considers only the administrative record in these cross-motions for summary judgment"), *opinion modified on recons.,* 2001 WL 902120 (E.D. Cal. Mar. 15, 2011).

    a. Four Exceptions to the General Rule Regarding Material Outside the Administrative Record

Although materials outside the administrative record are typically stricken, the Ninth Circuit has allowed extra-record review in only four narrow circumstances: when "[1] necessary to determine whether the agency has considered all relevant factors and has explained its decision; [2] the agency has relied on documents not in the record; [3] supplementing the record is necessary to explain technical terms or complex subject matter; [4] plaintiffs make a showing of agency bad faith." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). These exceptions only apply to "information available at the time, not post-decisional information." *Tri-Valley CAREs v. U.S. Dept. of Energy*, 671 F.3d 1113, 1130 (2012) (citing *Rock Creek Alliance v. U.S. Fish & Wildlife Serv.*, 390 F. Supp. 2d 993, 1002 (D. Mont. 2005)). The Ninth Circuit provides that "the scope of these exceptions permitted by our precedent is constrained, so that the exception does not undermine the general rule. Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making." *Lands Council v. Powell,* 395 F.3d at 1030. These exceptions may be widely accepted, however they are narrowly construed and applied. *Lands Council v. Powell*, 395 F.3d at 1030.

In their opposition, Plaintiffs have not (4) made a showing of agency bad faith or (2) demonstrated the agency relied on documents not in the administrative record. Therefore, the

Court will focus on exceptions (1) and (3) when reviewing the parties' arguments regarding these outside materials.

### i. *Declaration of Alan P. Meister*

The first outside document at issue is the Declaration of Alan P. Meister and the attached Exhibit 1, "Economic Impacts" analysis. (ECF No. 106). Defendant describes the contents of this document as being opinions and calculations regarding the likely impact of an Enterprise casino on Colusa's existing casino revenues. (ECF No. 115-1 at 5.)

In Plaintiff Colusa and Plaintiff UAIC's oppositions, both argue that courts are not always meant to be limited to the original administrative record. (ECF No. 131 at 1, ECF No. 127 at 1.) Plaintiffs refer to the *Bunker Hill* case where the court maintained that reviewing administrative regulations is often a difficult task and therefore courts are not "straightjacketed to the original record in trying to make sense of complex technical testimony." *Bunker Hill Co. v. E.P.A.*, 572 F.2d 1286, 1292 (9th Cir. 1977). In *Bunker Hill*, because of the complexity of the technological issues involved, the court requested a supplemental brief and therefore considered materials outside the original administrative record. *Id.* at 1292. However, these materials were merely explanatory of the original record and clarified a dispute that the court felt was somewhat unclear in the original record. *Id.* Here, the outside document is one that provides opinions and calculations regarding the likely impact of the Enterprise casino. Simply put, this document is not explanatory in nature, but rather provides new information in the form of opinions and calculations. There is no indication that this document will help clarify technical matters in the original record. Therefore, this document does not fall within the third exception.

Plaintiff UAIC refers to several other cases in its opposition, stating that courts can rely on a variety of extra-record background documents to inform their decisions in NEPA cases. (ECF No. 127 at 4–5.) However, unlike the Meister Declaration and the attached Exhibit in this case, these other cases all involve explanations of technical terms, database information, technical matters or factual complexities. (ECF No. 127 at 4–5.) There is no indication that the document at issue here is of the same nature or would be used in the same manner. Instead, said document will provide new information and data from what was in the original record.

6

1  Furthermore, in its opposition, Plaintiff Colusa references the first exception and claims
2  that the Court does not owe deference to an agency "when the agency has completely failed to
3  address some factor consideration of which was essential to [making an] informed decision."
4  (ECF No. 131 at 1 (*citing Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,* 422 F.3d 782,
5  789-99 (9th Cir. 2005))).  The Court does not disagree with this general point.  However, the
6  exception to the general rule "only applies to information available at the time, not post-
7  decisional information."  *Tri-Valley CAREs v. U.S. Dept. of Energy*, 671 F.3d 1113 (9th Cir.
8  2012) (*citing Rock Creek Alliance v. U.S. Fish & Wildlife Serv.*, 390 F. Supp. 2d at 1002).  As
9  Defendant explains, the documents themselves, and the economic data they reflect, post-date the
10 agency decision at issue here.  (ECF No. 115-1 at 5.)  The Meister Declaration was executed June
11 24, 2014, and the attached Exhibit 1 contains analysis dated May 2013 (ECF No. 121-1 at 2), both
12 of which post-date the November 2011 decision.  The Court agrees with Defendants' argument
13 that these documents preclude application of the first exception to the general rule because they
14 did not exist when the agency decision was made and therefore are not necessary to determine
15 whether the agency considered all relevant factors when making its decision.  (ECF No. 115-1 at
16 5.)  As noted earlier, courts normally refuse to consider evidence not before the agency at the time
17 it made its decision.  *See Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d at 1160; *Wiechers v.*
18 *Moore*, 2014 WL 1400843.  Plaintiff Colusa admits in its opposition that the Meister Declaration
19 and the attached Exhibit post-date the agency decision.  (ECF No. 131 at 3.)  Although Plaintiff
20 Colusa attempts to argue that this information should not be stricken because it analyzes
21 information available to Defendants prior to the final decision, the analysis itself is post-
22 decisional information and therefore should be stricken.
23  For the reasons provided above, the Court does not find this document to meet one of the
24 four narrow exceptions, and therefore follows the general rule and strikes the Declaration of Alan
25 P. Meister as material outside the original record.
26  ii.  <u>Affidavit of Marcos Guerrero</u>
27  The second document, the affidavit of Marcos Guerrero, describes Auburn's cultural ties
28 to the site.  (ECF No. 115-1 at 5.)  Plaintiff UAIC explains in its opposition that this affidavit

7

provides information about the history of Yuba County and Plaintiff UAIC's cultural practices that allow the Court to properly evaluate whether the Defendants "took a 'hard look' at the cultural and historic impacts of the project." (ECF No. 127 at 5.) Plaintiff UAIC maintains that this affidavit shows that the proposed project would interfere with Plaintiff UAIC's cultural practices and impair its views of spiritually significant geological features. (ECF No. 127 at 4.) Plaintiff UAIC explains that this background information is important to counter Defendants' attempts to both minimize UAIC's connections to the project site and suggest that Enterprise is the tribe most closely connected with Yuba County. (ECF No. 127 at 4.) Plaintiff UAIC claims that although it raised these issues to the BIA during the comment period and prior to issuing the Record of Decision, Defendants refused to consider them. (ECF No. 127 at 4.)[1]

Plaintiff UAIC submitted comments opposing Enterprise's application to the BIA on May 11, 2009[2]. (ECF No. 98-2 at 8; EN_AR_0026205.) Within these comments, the Plaintiff UAIC describes its historical ties with the site and provides that the proposed site is within the UAIC's ancestral lands. (EN_AR_0026208.)

To the extent that Plaintiff UAIC argues that the Guerrero Affidavit provides information regarding the historical impacts of the project, the Court concludes that the BIA has already taken this into consideration. In the BIA's Record of Decision, the BIA acknowledges that Plaintiff UAIC did assert that the site lies within the tribe's aboriginal and historic territory, thus confirming that the agency knew of this factor and took it into consideration. (EN_AR_NEW_0029810.) The BIA further provided that Enterprise committed itself to mitigation impacts, and that Plaintiff UAIC did not submit any evidence that Enterprise's mitigation efforts would be insufficient. (EN_AR_NEW_0029810.) The Court finds that the narrow exception (considering information outside the administrative record when necessary to

---

[1] On May 11, 2009, Plaintiff UAIC provided a supplemental letter in response to the January 16, 2009, solicitation by the BIA for comments on the Enterprise's application to conduct off-reservation gaming in Yuba County. The letter maintains that because Auburn was not on the distribution list for the January 16, 2009 letter, the BIA granted Auburn an extension to May 12, 2009. *See* EN AR NEW 0026813.

[2] As explained earlier, when the BIA solicited comments on Enterprise's application, with comments due by March 17, 2009, the Distribution List did not include the UAIC or any other Indian tribes. (ECF No. 98-2 at 8.) Plaintiff UAIC submitted comments to the BIA on March 12, 2009, and requested an extension of the comment period to provide additional comments. (ECF No. 98-2 at 8, Administrative Record EN_AR_0026263.) The BIA granted an extension to May 12, 2009, and Plaintiff UAIC submitted further comments on May 11, 2009.

determine whether the agency has considered all relevant factors) does not apply to the historical connection argument in the Guerrero Affidavit.

As for the cultural ties argument that Plaintiff UAIC claims was raised during the comment period, Defendants state that this evidence of alleged cultural ties to the site was not provided to the agency during the decision-making process. (ECF No. 135 at 2.) Defendant argues that Plaintiff UAIC did not explain why it did not or could not submit the information in the Guerrero Affidavit during the ten-year public process leading to approval of the project. (ECF No. 120-1 at 4.) In the BIA's Record of Decision, the BIA provides that "Auburn has not provided any information indicating that development of the Resort would have a negative impact on its asserted cultural connection to the Site." (EN_AR_NEW 0029810.) The Court agrees with the BIA and finds no discussion of the negative impact the project will have on Plaintiff UAIC's cultural connection to the site in Plaintiff UAIC's May 11, 2009 letter. The letter does explain that the UAIC holds a cultural connection to the site, but provides no evidence to support this notion. Thus, the agency was aware of the cultural connection, but Plaintiff UAIC did not provide anything to support this assertion. Further, the information contained in this affidavit is post-decision information.

The Ninth Circuit has determined that "post-decision information may not be advanced as a new rationalization either for sustaining or attacking an agency's decision." *Sw. Ctr. for Biological Diversity v. U.S. Forest Service*, 100 F.3d 1443, 1451 (1996). As the Ninth Circuit has stated, "when a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Asarco, Inc. v. U.S. Envtl. Protection Agency*, 616 F.2d at 1160. Consideration of outside evidence to determine the correctness of an agency's decision is not permitted. *Id*.

Here, Plaintiff UAIC's historical ties to the site were acknowledged by the BIA in the Record of Decision, and there is nothing to indicate that this factor was not taken into consideration by the agency. As for the cultural ties argument, this was not properly raised by Plaintiff UAIC in their comments and is therefore now post-decision information. The Court considers this to be a new rationalization that Plaintiff UAIC is using to attack the agency's

9

1  decision, which the Ninth Circuit has prohibited.  *See Sw. Center for Biological Diversity,* 100

2  F.3d at 1451.  Therefore, the Court strikes Guerrero's Affidavit.

3        *iii.*        *Affidavit of Gina S. Young*

4      In the Motion to Strike, Defendants state that the Young Declaration (ECF No. 49-5 Case

5  No. 2:13-cv-00064-TLN-AC) serves only to identify its exhibits.  (ECF No. 115-1 at 6.)  Plaintiff

6  UAIC agrees with Defendants that these documents merely help authenticate their attached

7  exhibits and explain the contents of these exhibits to the Court.  (ECF No. 127 at 5.)  Defendants

8  claim that there is no suggestion that these documents explain any technicalities, which would bar

9  use of the third exception (supplementing the record is necessary to explain technical terms or

10  complex subject matter).  (ECF No. 115-1 at 6.)  In response, Plaintiff UAIC contends that the

11  Young Declaration contains background information.  (ECF No. 127 at 5.)

12      Plaintiff UAIC explains that the Young Declaration and its exhibits will help the Court

13  understand the longstanding relationship between American Environmental Services[3] ("AES")

14  and Enterprise, and how AES was selected to work on the Environmental Impact Statement

15  ("EIS").  (ECF No. 127 at 5-6.)  Plaintiff UAIC also claims this document is necessary to show

16  how the BIA failed to consider the issue of AES' conflict of interest and its impact on the

17  preparation of the EIS.  (ECF No. 127 at 3.)  Plaintiff UAIC alleges that Enterprise had excessive

18  involvement in the EIS process.  (ECF No. 127 at 3.)  For example, Plaintiff UAIC states that

19  Exhibit 7 contains an email from AES's Chad Broussard to Enterprise stating that "we may want

20  to have a conference call to discuss strategy for pushing the [notice of Availability for the Draft

21  EIS] through."  (ECF No. 127 at 3.)  Therefore, Plaintiff UAIC argues that this document is

22  necessary for the Court to review in determining whether the BIA failed in its duty to investigate

23  the conflict.  (ECF No. 127 at 3.)

24      In response, Defendants argue that these exhibits to the Young declaration shed no light

25  on whether AES had a conflict of interest.  (ECF No. 135 at 2.)  Defendants instead claim that

26  these exhibits merely reflect that AES and Enterprise were working cooperatively as one would

27

28  [3] Analytical Environmental Services ("AES") is a private company that was under contract with Enterprise and drafted the Environmental Impact Statement.  (ECF No. 1 at ¶29.)

1  expect of contracted parties. (ECF No. 135 at 2.)

2  The Court finds that Plaintiff's allegations of a conflict are unsupported by the Young
3  Declaration and its exhibits. It is not entirely clear whether a conflict existed or not; Defendants
4  claim there is no conflict of interest. Furthermore, Plaintiff UAIC provides no support to suggest
5  that the agency did not take this into consideration when making its decision. Therefore, this
6  document is not relevant and does not fit the third exception to the general rule in any event. The
7  Court strikes the Affidavit of Gina S. Young.

8        iv.    *Declaration of Bryan M. Killian and the attached Exhibit 3*

9  The attached Exhibit 3 to the Killian Declaration is a letter to the BIA dated November 3,
10 2010 from Plaintiff UAIC. (ECF No. 54-3.) Plaintiff UAIC asserts that this document provides
11 information about the history of Yuba County and UAIC's cultural practices. (ECF No. 127 at 4.)
12 Plaintiff UAIC explains that because the BIA failed to adequately consult with Plaintiff UAIC as
13 a nearby tribe, UAIC was forced to file supplemental comments after the close of the comment
14 period. (ECF No. 127 at 4.) These supplemental comments constitute Exhibit 3 to the Killian
15 Declaration. (ECF No. 127 at 4.) In the letter, Plaintiff UAIC addresses how Enterprise claimed
16 to have a significant historical connection to the land. (ECF No. 54-3.) In response to
17 Enterprise's statement, Plaintiff UAIC sent this letter to supplement its objections for the record.
18 (ECF No. 54-3.) Plaintiff UAIC argues that Enterprise failed to meet the required test for
19 claiming a significant historical connection to Yuba County and provides various arguments to
20 negate Enterprise's claim. (ECF No. 54-3.) Plaintiff UAIC contends that the BIA did not
21 consider these comments when making their decision. (ECF No. 127 at 4.)

22 In their Reply, Defendants address Plaintiff UAIC's contentions regarding the tribe's
23 "strong historical connections to the area" generally and argue that this is all post-decision
24 information. (ECF No. 135 at 2-3.) However, the Killian Declaration and Exhibit 3 do not
25 contain post-decisional information. The letter in Exhibit 3 was dated November 3, 2010, which
26 is before the date of the Record of Decision (September 2011). (ECF No. 54.) Therefore, this
27 information was sent to the BIA before their decision.

28 Although the letter is not post-decision information, the Court nevertheless does not find

11

the third exception to apply here.  There is nothing to suggest that the BIA did not consider the factor of whether Enterprise had a significant historical connection to the land.  To the contrary, the BIA specifically mentions in the Record of Decision that the "site lies within the Tribe's aboriginal and historical area in the Feather River Drainage Basin and is an area to which the Tribe maintains a significant historical connection previously recognized by other Federal and state agencies." (*PRO Binder 1, Exhibit II, Tab A*) (EN _AR_NEW_0029810).  The BIA determined that Enterprise did maintain a significant historical connection and it appears that the BIA relied on previous recognitions by other Federal and state agencies.  Therefore, this factor was considered by the agency and the third exception to the general rule regarding information outside the administrative record does not apply here.  The Court strikes the Declaration of Bryan M. Killian and the attached Exhibit 3.

### IV.     CONCLUSION

The Court hereby grants Defendants' Motion to Strike (ECF No. 115), and strikes the following:

1. The Declaration of Alan P. Meister and the attached Exhibit 1, "Economic Impacts" analysis (ECF No. 106);
2. The Affidavit of Marcos Guerrero (ECF No. 49-2 in Case No. 2:13-cv-00064-TLN-AC);
3. The Declaration of Gina S. Young (ECF No. 49-5 in Case No. 2:13-cv-00064-TLN-AC) and the attached Exhibits 3, 5, 7, 9, and 10; and
4. The Declaration of Bryan M. Killian and the attached Exhibit 3.

The Court also grants Enterprise's Motion to Strike (ECF No. 120), and strikes the following:

1. The Affidavit of Marco Guerrero;
2. The portions of UAIC's Statement of Facts (ECF No. 98-2) referring to the Guerrero Affidavit; and
3. The portions of Plaintiff UAIC's Motion for Summary Judgment (ECF No. 98-1) relying on the Guerrero Affidavit.

Finally, the Court grants Enterprise's Motion to Strike (ECF No. 121), and strikes the following:

1. The Meister Declaration and the portions of Plaintiff's Motion for Summary Judgment (ECF No. 102-1) relying thereon.

IT IS SO ORDERED.

Dated: June 16, 2015

Troy L. Nunley
United States District Judge