UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CACHIL DEHE BAND OF WINTUN INDIANS OF THE COLUSA INDIAN COMMUNITY, a federally recognized Indian tribe, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>Defendants. | No. 2:12-cv-03021-TLN-AC<br><br>**ORDER** |

This matter is before the Court pursuant to a motion for reconsideration filed by Plaintiff Cachil Dehe Band of the Wintun Indians of the Colusa Indian Community ("Colusa"). (ECF No. 170.) Colusa asks the Court to reconsider its prior Order (ECF No. 168) denying Colusa's motion for summary judgment and granting summary judgment in favor of Defendants ("Summary Judgment Order").[1] The Court has carefully considered the arguments put forth in the parties' briefing. Colusa's motion for reconsideration is hereby DENIED.

**I.    Factual and Procedural Background**

The underlying dispute in the instant case concerns a proposed casino. Defendant-

---

[1] Defendants include the Secretary of the Interior, the Assistant Secretary–Indian Affairs, the Bureau of Indian Affairs, and the Department of the Interior. (*See* Order, ECF No. 168 at 1 n.1.)

1

1  Intervenor Estom Yumeka Maidu Tribe of the Enterprise Rancheria ("Enterprise") plans to build
2  a casino and hotel on a 40-acre parcel of land in Yuba County (the "Yuba site"). Several
3  plaintiffs, including Colusa, brought the instant lawsuit against a suite of federal officials within
4  the Department of the Interior ("DOI") and its relevant subdivisions. At the heart of the case is a
5  decision by those DOI officials to accept the Yuba site into federal trust status and allow gaming
6  on the land. (Compl., ECF No. 1 at ¶ 1.)

On September 24, 2015, the Court issued the Summary Judgment Order. (ECF No. 168.)
On October 22, 2015, Colusa filed the instant motion seeking reconsideration of the Summary
Judgment Order pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. (Pl.'s
Mot. for Reconsideration, ECF No. 170 at 1:19–21.) Colusa contends that "the Court omitted
consideration of several claims included in Colusa's Memorandum of Points and Authorities in
support of its Motion for Summary Judgment." (ECF No. 170 at 1:21–23.)

On December 19, 2016, Colusa filed a status report encouraging the Court to defer action
on Colusa's motion. (ECF No. 181.) According to Colusa, "very recent developments in two
cases pending in the courts of the State of California . . . now militate in favor of deferring action
on Colusa's motion." (ECF No. 181 at 1:24–28.) However, Colusa has not withdrawn its
motion, instead suggesting that the Court should simply defer its ruling until some future date.
(ECF No. 181 at 4:10–15.) Colusa is correct that the pending state court cases may affect
whether Defendants properly took the Yuba site into trust status, but the issue in those state cases
is not presently before the Court and in no way affects the Court's evaluation of Colusa's motion.
The Court therefore declines Colusa's invitation to defer ruling, and now turns to the motion
itself.

**II.  LEGAL STANDARD**

"[A] motion for reconsideration of summary judgment is appropriately brought under
either Rule 59(e) or Rule 60(b)." *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1442 (9th Cir. 1991). A
motion for reconsideration is evaluated under Rule 59(e) if it is timely filed under that rule. *Am.
Ironworks & Erectors, Inc. v. N. Am. Const. Corp.,* 248 F.3d 892, 898–99 (9th Cir. 2001).
Otherwise, it is treated as a Rule 60(b) motion. *Id.* at 899. Colusa's motion was filed within 28

days of the Summary Judgment Order and entry of judgment, so it is properly construed as a Rule 59(e) motion.[2]

Rule 59(e) allows a party to file a motion to alter or amend a judgment. An order granting such relief is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir. 2003). A Rule 59(e) motion for reconsideration should not be granted unless (1) the Court is presented with newly discovered evidence, (2) the Court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law. *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 780 (9th Cir. 2009). Under Local Rule 230(j), the party seeking reconsideration must submit a filing setting forth, among other things, "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon [the party's] prior motion, or what other grounds exist for the motion [for reconsideration]." L.R. 230(j). To succeed, the party seeking reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 563 F. Supp. 2d 1158, 1162 (E.D. Cal. 2008).

### III. DISCUSSION

Colusa asserts that reconsideration is warranted because the Court "omitted consideration" of four arguments that Colusa made in its motion for summary judgment. (ECF No. 170 at 1:21–23.) Those four arguments concern the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 461 *et seq.*, and the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.* Although not expressly stated by Colusa, the tenor of Colusa's motion is that the Court committed clear error justifying

---

[2] Although the Court construes Colusa's motion as a Rule 59(e) rather than a Rule 60(b) motion, the motion would fare no better under Rule 60(b). Rule 60(b) allows the Court to relieve a party from final judgment under six circumstances, only two of which are potentially applicable here. Rule 60(b)(1) allows to the Court to relieve a party from a judgment that is based on mistake, inadvertence, surprise, or excusable neglect. As discussed below, the Summary Judgment Order was not the product of a mistake by the Court. Rule 60(b)(6) is a residual clause that allows the Court to relieve a party from judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). However, Rule 60(b)(6) "is to be 'used sparingly as an equitable remedy to prevent manifest injustice.'" *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (quoting *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006)). For the same reasons the Court finds no clear error justifying reconsideration, the Court finds no manifest injustice resulting from the Summary Judgment Order.

1  reconsideration by omitting consideration of those four arguments, and that proper consideration
2  of Colusa's arguments would have led the Court to a different result. The Court finds Colusa's
3  position unpersuasive for two reasons. First, the Court did not omit consideration of Colusa's
4  arguments, even if Colusa was dissatisfied with the treatment those arguments received in the
5  Summary Judgment Order. Second, the Court concludes that the Summary Judgment Order did
6  not reach a clearly erroneous result because Colusa's arguments, considered anew, still fail.

A.  NEPA: Insufficient Consideration of Alternatives

NEPA provides a process to ensure that federal agencies take a "hard look" at the environmental consequences of their actions. *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1070 (9th Cir. 2002). NEPA requires an agency to prepare an Environmental Impact Statement ("EIS") when deciding whether to undertake a proposed action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c); 40 C.F.R. § 1508.23. *See also Kleppe v. Sierra Club*, 427 U.S. 390, 399 (1976). Among other things, the EIS must include a discussion of alternatives to the proposed action. 42 U.S.C. § 4332(2)(c)(iii). "An agency must look at every reasonable alternative, with the range dictated by the nature and scope of the proposed action, and sufficient to permit a reasoned choice." *Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*, 67 F.3d 723, 729 (9th Cir. 1995).

In its motion for reconsideration, Colusa rehashes an argument from its motion for summary judgment: "the EIS completely ignored a logical alternative based on Enterprise's purchase of 63 acres of land adjacent to the City of Oroville in Butte County in 2006, while the Draft EIS was still under development." (ECF No. 170 at 2:8–10 (quoting Pl.'s Mot. for Summ. J., ECF No. 102-1 at 9:18–20).) According to Colusa, "the 63-acre alternative remains entirely unexamined" by the DOI and by the Court in the Summary Judgment Order. (ECF No. 170 at 2:27.)

Colusa is correct that the Court did not explicitly discuss the 63-acre Butte County parcel (the "63-acre parcel") in the Summary Judgment Order. In fact, the argument was waived. The burden is on the party challenging an EIS to offer feasible alternatives during the administrative process. *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1208 (9th Cir. 2004) (citing *Morongo Band*

4

*of Mission Indians v. F.A.A.*, 161 F.3d 569, 576–77 (9th Cir. 1998)). *See also City of Angoon v. Hodel*, 803 F.2d 1016, 1022 (9th Cir. 1986) (citing *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553 (1978)). Colusa did not comment on the Draft EIS, much less submit a comment requesting analysis of the 63-acre parcel. (*See* EN_AR_NEW_0026412–15 (listing parties who commented on the Draft EIS).)[3] That failure to comment is why the Court concluded in the Summary Judgment Order: "given that Plaintiffs did not provide any additional alternatives, the Court cannot presume that an adequate alternative exists somewhere else." (ECF No. 168 at 9:6–7.) The Court did not simply omit consideration of Colusa's argument.

        B.  <u>NEPA: Insufficient Analysis of Socioeconomic Impacts</u>

Under NEPA, an EIS must also address the socioeconomic consequences of the environmental impact of the proposed action. *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 106–07 (1983). In its motion for summary judgment, Colusa argued that the Final EIS ("FEIS") was based on stale data and an economic study that relied upon "pure, unanchored conjecture." (ECF No. 102-1 at 10:12–11:19.) In its motion for reconsideration, Colusa concedes that the Court resolved Colusa's claim that the data was stale, but contends that the Court "did not address the argument that the data and analysis were fundamentally flawed." (ECF No. 170 at 3:8–9.)

Colusa's arguments about "fundamentally flawed" data and analysis were stricken from Colusa's motion for summary judgment. On July 24, 2014, Enterprise moved to strike the Declaration of Alan P. Meister (ECF No. 106) and those portions of Colusa's motion for summary judgment relying on the Meister Declaration. (Def.'s Mot. to Strike, ECF No. 121.) Specifically, Enterprise requested that the Court strike, among other things, page 10, lines 17–24, and page 11, lines 3–9 of Colusa's motion for summary judgment. (ECF No. 121-1 at 4:9–10 n.1.) On June 17, 2015, the Court granted Enterprise's motion. (ECF No. 158.) Following the Order granting Enterprise's motion, the relevant, unstricken portions of Colusa's motion for

---

[3] The administrative record in this case was initially lodged with the Court on May 17, 2013 (ECF Nos. 79, 80), but was revised due to the inadvertent inclusion of documents subject to confidentially requirements. (Order, ECF No. 88 at 1:25–2:17.) The Court cites the revised administrative record as EN_AR_NEW_[page number].

summary judgment read:

> Appendix M, upon which the FEIS relies for its socioeconomic data, was completed in 2006 based upon statistics from 2005 and even earlier. It analyzes what it calls the projected "cannibalization" of other tribal casino businesses by an Enterprise casino. Enterprise's contractors analyzed the economics of a casino well before the economic downturn that began in earnest in 2008, and made rosy assumptions about economic activity in 2009.
>
> . . . Although the EIS was not updated to consider the recession (or higher gas prices), defendants relied upon the downturn to support the proposed casino as a source of jobs in the area, but did not address the effect of the downturn on the potential profits from the casino and the impacts on nearby tribes in light of the downturn, and provided no actual data.

(ECF No. 102-1 at 10:12–16, 10:24–11:2 (citations omitted).) This outdated-information argument was directly addressed in the Summary Judgment Order. (ECF No. 168 at 13:9–24.) The Court did not omit consideration of this argument either.

### C.  IRA: Inadequate Consideration of the 63-acre Parcel

The IRA authorizes the Secretary of the Interior to acquire land and hold it in trust "for the purpose of providing land for Indians." 25 U.S.C. § 465.[4] However, the DOI's fee-to-trust regulations limit the Secretary's discretion to acquire land in trust. The Secretary may acquire trust land under § 465 if "the acquisition of the land is necessary to facilitate tribal self-determination, economic development, or Indian housing." 25 C.F.R. § 151.3(a)(3). Moreover, the Secretary must consider several factors in determining whether to acquire land in trust, including "[t]he need of the individual Indian or the tribe for additional land." *Id.* at § 151.10(b) (governing land acquisitions that are within or contiguous to Indian reservations); *id.* at § 151.11(a) (incorporating the § 151.10 requirements for off-reservation acquisitions).

In its motion for summary judgment, Colusa argued that the Secretary acted arbitrarily

---

[4] Effective September 1, 2016, some provisions from Chapter 14 of Title 25 of the United States Code were reorganized and transferred to three new chapters at the end of the Title. *See* Office of the Law Revision Counsel, United States House of Representatives, *Editorial Reclassification, Title 25, United States Code*, http://uscode.house.gov/editorialreclassification/t25/index.html (last visited Dec. 5, 2016). *See also Upstate Citizens for Equal., Inc. v. United States*, 841 F.3d 556, 560 n.3 (2d Cir. 2016) (discussing the reorganization). Section 465 was among the reorganized provisions, and is now codified at 25 U.S.C. § 5108. Nevertheless, in this Order the Court will cite that provision as § 465 to maintain consistency with the parties' briefs, the Court's Summary Judgment Order, and prior opinions in this area.

and capriciously because the Secretary "did not find that [Enterprise] has a 'need' for the land so much as a 'desire' for it." (ECF No. 102-1 at 16:15.)  In support of its larger need-versus-desire argument, Colusa argued that the DOI's record of decision ("ROD") "does not address the 63-acre parcel." (ECF No. 102-1 at 16:20–21.)  Now, Colusa argues that the Court "did not address the failure of the Secretary to analyze Enterprise's 'need' for [the Yuba site] in light of the fact that the tribe already owned [the] 63-acre parcel." (ECF No. 170 at 4:23–24.)

Colusa's argument on this point does not justify reconsideration for two reasons.  First, the Summary Judgment Order makes plain that the Court did not simply omit consideration of Colusa's arguments.  For example, the Court noted that Colusa and Plaintiff United Auburn Indian Community ("UAIC") "both allege that Defendants failed to adequately consider and analyze Enterprise's 'need' for additional land." (ECF No. 168 at 25:1–2.)  In fact, the Court directly addressed the argument that "Enterprise simply wanted additional land, rather than needed it." (ECF No 168 at 25:6.)  Nevertheless, Colusa correctly observes that the Summary Judgment Order does not resolve the need-versus-desire argument with specific references to the 63-acre parcel.  To that end, the Court now takes the opportunity to set forth more fully the second reason why reconsideration is unwarranted: the Secretary's determination was not arbitrary and capricious.

The arbitrary and capricious standard of review is a deferential one, and the Court cannot substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Instead, an agency decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*  According to Colusa, the Secretary's determination was arbitrary and capricious because of the Secretary's "complete failure to consider the 63-acre parcel." (ECF No. 170 at 5:1 (citing *State Farm*, 463 U.S. at 43).)

Colusa's argument misses the mark because Enterprise's ownership of the 63-acre parcel is not "an important aspect of the problem." *State Farm*, 463 U.S. at 43.  In fact, Enterprise's

7

ownership of the 63-acre parcel does not affect whether Enterprise needs additional land for a casino. The 63-acre parcel is dedicated to low- and moderate-income tribal housing and Enterprise "does not intend to use the parcel for anything except tribal housing and related uses." (EN_AR_NEW_002969–70.) However, the Secretary concluded that Enterprise needs the Yuba site held in trust "in order to better exercise its sovereign responsibility *to provide economic development to its tribal citizens*." (EN_AR_NEW_0030214 (emphasis added).) The 63-acre parcel is not available for that purpose. Enterprise must site its casino elsewhere, either on its existing Rancheria or on another parcel like the Yuba site.

Ostensibly, building housing on the 63-acre parcel would free up the existing Rancheria as a casino site. This appears to be the gravamen of Colusa's argument. But Enterprise's ability to site its proposed casino on the existing Rancheria is not contingent on the Rancheria being unused for new housing. In fact, as the ROD points out, the existing Rancheria "is not sufficient for tribal housing needs, tribal government *or* economic development purposes." (EN_AR_NEW_0030214 (emphasis added).) Terms connected by a disjunctive like "or" are ordinarily given separate meanings. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (applying that rule in interpreting the plain meaning of a statute). Thus, the Secretary found that the existing Rancheria site "is not sufficient for . . . economic development purposes"—regardless of its concomitant insufficiency for new tribal housing or tribal government needs. (EN_AR_NEW_0030214.) Even if Enterprise built all its future tribal housing on the 63-acre parcel, that construction would not transform the existing Rancheria into a suitable parcel for a casino and hotel. Because the 63-acre parcel is not an "important aspect" of whether Enterprise needs additional land to build its casino, it was not arbitrary and capricious for the Secretary to forego discussion of the parcel. *State Farm*, 463 U.S. at 43. Colusa has not shown that the Summary Judgment Order was clearly erroneous, so reconsideration is not warranted. *See Nakatani*, 324 F.3d at 945.

### D. IGRA: Inadequate Detrimental Impacts Analysis

IGRA generally prohibits gaming on lands acquired in trust after 1988. 25 U.S.C. § 2719(a). However, IGRA also provides several exceptions to that general prohibition. *Id.* at

§ 2719(b).  One such exception, known as the Secretarial Determination, authorizes gaming on otherwise-ineligible trust land when the Secretary of the Interior, after consulting with a variety of stakeholders, "including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community." *Id.* at § 2719(b)(1)(A). Under the DOI's IGRA regulations, "nearby Indian tribe" is defined as "an Indian tribe with tribal Indian lands located within a 25-mile radius of the location of the proposed gaming establishment, or, if the tribe has no trust lands, within a 25-mile radius of its government headquarters." 25 C.F.R. § 292.2.  "Surrounding community" is defined as "local governments and nearby Indian tribes located within a 25-mile radius of the site of the proposed gaming establishment." *Id.*  A tribe or local government outside the 25-mile radius that wishes to participate in the consultation process may petition to be involved, provided it can establish that "its governmental functions, infrastructure or services will be directly, immediately and significantly impacted by the proposed gaming establishment." *Id.*  In short, 25 miles is the critical threshold for inclusion in the IGRA process.

In its motion for summary judgment, Colusa argued that, "[d]espite the fact that the significant, adverse impacts of the Proposed Casino on Colusa should have been obvious to DOI from 2002, the RODs both ignored Colusa, finding UAIC to be the only 'nearby Indian tribe'". (ECF No. 102-1 at 13:23–25.)  Apparently recognizing that the 25-mile threshold was fatal to its argument, Colusa then spent several pages of its motion for summary judgment arguing that the 25-mile threshold was itself arbitrary and capricious.  (ECF No. 102-1 at 13:27–16:11.)  Now, Colusa contends that the Court did not address Colusa's argument that DOI "incorrectly ignored the detrimental economic impacts" that Enterprise's proposed casino would have on Colusa. (ECF No. 170 at 5:9–10.)  Colusa is incorrect.  In the Summary Judgment Order, the Court directly addressed—and rejected—Colusa's challenge to the 25-mile threshold in the definition of "nearby Indian tribe," thereby dispensing with Colusa's IGRA argument.  (ECF No. 168 at 18:4–8.)  Despite Colusa's dissatisfaction, it is clear that the Court did not omit consideration of this argument either.

9

### IV. CONCLUSION

For the reasons set forth above, Colusa has not shown that reconsideration of the Summary Judgment Order is warranted. Colusa's motion for reconsideration is hereby DENIED.

IT IS SO ORDERED.

Dated: January 20, 2017

    Troy L. Nunley
    United States District Judge